The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hedrick and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On 16 December 1998, the date of plaintiff's injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant.
3. A set of plaintiff's medical records, attached to the parties' Pre-Trial Agreement, is admitted into evidence.
4. The depositions of Jacinto C. Alvarado, M.D., Marilou V. Inocalla, M.D. and Verne G. Schmickley, Ph.D. are a part of the evidentiary record in this matter.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty years old. He had worked as a long haul truck driver for approximately three years as of 16 December 1998. Plaintiff completed seven years of formal education. He did not receive a GED.
2. Defendant employed plaintiff and his wife to drive a tractor-trailer rig from the east coast to the west coast. Defendant delivered furniture to the west coast and fruits and vegetables to the east coast.
3. By Order filed 16 August 1999, the parties were allowed to offer plaintiff's payroll records or a Form 22 Wage Chart into evidence within the time allowed for deposing the medical witnesses before the Deputy Commissioner. However, the Commission received no wage records and no Form 22 Wage Chart. Therefore, plaintiff's average weekly wage is determined based upon the evidence of record consisting solely of plaintiff's testimony. Plaintiff testified that while employed by defendant he earned between $800.00 and $1,100.00 per week. Assuming that plaintiff earned the smaller amount each week, his earnings were sufficient to yield the maximum compensation rate for 1998 of $532.00.
4. Plaintiff earned $800.00 per week while employed by defendant. If he had not been injured on 16 December 1998, plaintiff would have continued to be able to earn $800.00 per week.
5. At approximately 6:00 a.m. on 16 December 1998, plaintiff and his wife were traveling through Texas, near El Paso. Plaintiff's wife was driving the truck while plaintiff slept in the tractor's sleeping compartment. Plaintiff's wife allowed the truck to leave the roadway. After leaving the roadway, the truck rolled onto its side and crashed. Immediately prior to the crash, plaintiff's wife screamed and awoke him. During the crash, plaintiff and his wife were tossed about inside of the tractor's cab. Plaintiff did not immediately believe that he was injured. However, he began to experience head and back pain later in the evening. Plaintiff's wife also sustained injuries in the crash. Plaintiff's wife received treatment for her injuries in the emergency department of a local hospital.
6. Following the crash, defendant leased a truck for plaintiff to drive and complete his trip. Driving the leased truck, plaintiff left Texas in route to Arizona at approximately 6:00 p.m. Using the leased truck, plaintiff completed his assigned trip to Arizona and then he returned to North Carolina, arriving on 20 December 1998.
7. The truck driven by plaintiff and his wife on 16 December 1998 was the only truck owned by defendant.
8. After returning to North Carolina, defendant directed plaintiff to return the leased truck to El Paso. When plaintiff returned the truck to El Paso, he stayed in El Paso for several days searching for his dog, which had escaped and run away from the truck after the 16 December 1998 crash.
9. On 6 January 2000, plaintiff met with defendant's owner, Mr. Nowlin to discuss plaintiff's future employment with defendant. During this conversation, plaintiff and Mr. Nowlin discussed changes in the terms of plaintiff's future employment. Mr. Nowlin also asked plaintiff why a third person had been riding in the truck when plaintiff returned the leased truck to El Paso. This conversation ended when plaintiff said to Mr. Nowlin, "You can get someone else to drive your [expletive] truck." Thereafter, Mr. Nowlin replaced the crashed truck and hired another person to drive his new truck.
10. As of the date of the hearing before the Deputy Commissioner, plaintiff had not sought employment with any other employer.
11. Plaintiff first sought medical treatment on 15 January 1999 when he presented to the emergency department of Smyth County Community Hospital. On that date, plaintiff complained of experiencing pain his back and legs since being involved in the crash on 16 December 1998. He also complained of inability to sleep since that incident. Plaintiff received prescriptions for medications and an excuse from work extending from that date through 22 January 1999.
12. Plaintiff presented to Dr. Alvarado on 27 January 1999. On that date, plaintiff complained of pain in his low back and left lower extremity. Based upon plaintiff's history and the results of the examination on that date, Dr. Alvarado excused plaintiff from work through 7 February 1999. Thereafter, plaintiff received periodic evaluations and treatment from Dr. Alvarado. Following each of these subsequent evaluations, Dr. Alvarado extended plaintiff's excuse from work, ultimately extending his excusal from work through 21 April 1999. While under Dr. Alvarado's care, plaintiff began receiving prescription medications for depression and anxiety.
13. On 12 March 1999, plaintiff presented to Mount Rogers Community Mental Health Center where he began receiving therapy from Ms. Shabazz and treatment from Dr. Inocalla. During the course of plaintiff's treatment, Dr. Inocalla diagnosed plaintiff as having post-traumatic stress syndrome, depression and anxiety. These conditions were caused, accelerated or aggravated by the incident on 16 December 1998.
14. Dr. Schmickley, who performed an independent psychological evaluation of plaintiff at defendant's request, primarily diagnosed plaintiff as a having a somatoform disorder and a depressive disorder. He concurred with Dr. Inocalla's conclusion that plaintiff was incapable of working through the date of the hearing due to this psychiatric condition.
15. Plaintiff has not reached maximum medical improvement and will benefit from additional psychological testing and continued psychiatric treatment.
16. As a result of the incident on 16 December 1998, plaintiff was rendered incapable of earning wages from defendant or any other employer from 15 January 1999 through the date of the hearing before the Deputy Commissioner and continuing.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 16 December 1998, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant. G.S. § 97-2(6).
2. As a result of his injury, plaintiff is entitled to payment of temporary total disability compensation at the rate of $532.00 per week beginning 15 January 1999 and continuing until he returns to work at the same or greater wages or until further order of the Commission. G.S. § 97-29.
3. Plaintiff is entitled to additional psychological evaluations and additional psychiatric treatment to be provided by defendant. G.S. §97-25.
4. Subject to the limitations of G.S. § 97-25.1, plaintiff is entitled to payment of all reasonably necessary medical expenses incurred for treatment of plaintiff's physical and psychological injuries to the extent that such treatment tends to effect a cure, provide relief or lessen the period of disability. G.S. § 97-25; § 97-25.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $532.00 per week beginning 15 January 1999 and continuing until he returns to work at the same or greater wages or until further order of the Commission. To the extent that this amount has accrued, it shall be paid in one lump sum, subject to the attorney's fee approved in paragraph 4.
2. Defendant shall provide plaintiff with additional psychological evaluations and additional psychiatric treatment.
3. Defendant shall pay all reasonably necessary medical expenses incurred by plaintiff for treatment of his physical and psychological injuries to the extent such treatment tends to effect a cure, provide relief or lessen the period of disability, subject to the limitations of G.S. § 97-25.1.
4. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's attorney and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that amount and paid directly to plaintiff's attorney. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
5. Defendant shall pay the costs, including $300.00 to Dr. Schmickley as an expert witness fee, if not already paid.
This the ___ day of August 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER